UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DEWAYNE BROWN,

                    Petitioner,             Case No. 1:14-cv-458

v.                                   Honorable Paul L. Maloney

CARMEN D. PALMER,

                    Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

Petitioner James Dewayne Brown presently is incarcerated at the Michigan Reformatory. He pleaded nolo contendere in the Bay County Circuit Court to two counts of first-degree criminal sexual conduct (CSC I) involving a person under 13 years, MICH. COMP. LAWS § 750.520b. On November 21, 2011, he was sentenced to two prison terms of 15 to 40 years.

On May 18, 2013, Petitioner filed a motion to correct an invalid sentence, arguing that the sentence was disproportionate and was based on inaccurate information and on improper scoring of the guidelines. The trial court denied the motion on August 8, 2012.

Petitioner appealed his convictions to both the Michigan Court of Appeals and the Michigan Supreme Court, raising the same four grounds presented in his habeas petition:

I. THE [PETITIONER'S] SENTENCES WERE INVALID BECAUSE THEY WERE BASED ON INACCURATE INFORMATION, I.E., IMPROPER SCORING OF THE LEGISLATIVELY IMPOSED SENTENCING GUIDELINES, USE OF AN INCORRECT BURDEN OF PROOF, AND INSUFFICIENT FACTS; THEREFORE, HIS DUE PROCESS RIGHTS WERE VIOLATED.

II. CORRECTLY SCORING THE GUIDELINES WOULD REQUIRE RESENTENCING.

III. THE [PETITIONER] RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

IV. THE PROSECUTION WAS IN ERROR IN ITS ARGUMENT THAT THIS WAS A "SPECIFIC SENTENCE" AND THEREFORE THE GUIDELINES WERE NOT SUBJECT TO REVIEW.

(Pet., docket #1, Page ID##2-7.) The court of appeals and the supreme court denied leave to appeal on March 12, 2013 and July 30, 2013, respectively.

Petitioner filed the instant habeas petition on or about April 18, 2014.

**Discussion**

I.      Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  The Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  "In *Greene*, the Court clarified that state courts must follow clearly established law as it existed 'at the time of the state-court adjudication on the merits.'" *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014).  "That is, under 28 U.S.C. § 2254(d), 'clearly established Federal law' is the law at the time the original decision was made, not as [the Sixth

Circuit had previously held], the law 'before the conviction became final.'" *Miller*, 642 F.3d at 644 (quoting *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–406). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (Apr. 23, 2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Richter*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan

appellate court is considered a decision on the merits entitled to AEDPA deference).    The

presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances

indicate that the state court has not addressed the merits of a claim, the court conducts *de novo*

review. *See id.* (recognizing that, among other things, if the state court only decided the issue based

on a state standard different from the federal standard, the presumption arguably might be

overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's

decision was on the merits "may be overcome when there is reason to think some other explanation

for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing

habeas issue *de novo* where state courts had not reached the question).

      The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*,

160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v.

Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

    II.   <u>Merits</u>

      In Grounds I, II and IV of his petition, Petitioner makes a series of overlapping

arguments concerning the validity of his sentences.  Because Petitioner reiterates his arguments

under multiple headings, the Court has consolidated the essential claims as follows:  (1) the trial

court improperly found facts that led to a higher sentence, in violation of *Apprendi v. New Jersey*,

530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S.

220 (2005), and *Cunningham v. California*, 549 U.S. 270 (2007); (2) Petitioner was sentenced on the basis of inaccurate information in violation of the Due Process Clause of the Fifth and Fourteenth Amendments, because the sentencing guidelines (specifically, Offense Variables (OVs) 3, 4, 7, 10, 11, and 13) were misscored; (3) Petitioner's sentence was disproportionate to the offense, in violation of state law and the Eighth Amendment; and (4) the sentence violated Petitioner's *Cobbs*[1] agreement.   In his third ground for habeas relief, Petitioner argues generally that trial counsel was ineffective in failing to object to the alleged sentencing errors.   The Court will consider the ineffective assistance of counsel claim as it discusses each of the alleged sentencing errors.

### A.      *Apprendi/ Brady/ Booker/ Cunningham* Claim

Petitioner argues that the sentencing judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt.   Petitioner bases his argument on a series of United States Supreme Court holdings in *Apprendi*, 530 U.S. 466, *Blakely*, 542 U.S. 296, *Booker*, 543 U.S. 220, and *Cunningham*, 549 U.S. 270.

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.   *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.   In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing guideline scheme.   *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum

---

[1]*People v. Cobbs*, 505 N.W.2d 208 (1993) (holding that, where a judge preliminarily agrees to a particular sentence as the basis for a defendant's entry of a plea, the defendant must be given an opportunity to withdraw his plea if the subsequent sentence exceeds the preliminary evaluation).

sentence permitted by law on the basis of facts not found by the jury but by the judge.  Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant.  The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  *Blakely,* 542 U.S. at 301 (citing *Apprendi*, 530 U.S. at 490); *see also Booker*, 543 U.S. at 233 (applying *Blakely* rule to mandatory federal sentencing guidelines); *Cunningham*, 549 U.S. at 272-73 (addressing the California determinate sentencing system).

Unlike the State of Washington's determinate sentencing system struck down in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term.  The maximum sentence is not determined by the trial judge, but is set by law.  *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8).  Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)).  The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*.  *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

Therefore, the state court's rejection of Petitioner's claim was not contrary to federal law clearly established by the United States Supreme Court or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Moreover, because the issue

lacks merit, counsel was not ineffective for failing to object at the time of sentencing. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

### B.      Sentencing Guideline Errors

Petitioner states that he was sentenced on inaccurate information.  A court violates due process when it imposes a sentence based upon materially false information.  *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted).  To prevail on his claim, Petitioner has the burden of demonstrating "first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988) (citations omitted).

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information.  Instead, he argues only that the sentencing court should have scored certain offense variables differently on the facts before it.  He therefore fails to demonstrate that his sentence violated due process.  *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

Petitioner's claim that the sentencing guidelines were misscored is, standing alone, a claim that is not cognizable on habeas review.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)). The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 131 S. Ct. at 14; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68

-8-

(1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  As a consequence, Petitioner has no federal claim directly arising out of the alleged sentencing errors.

However, Petitioner argues that his attorney was ineffective in failing to object to the scoring of OV 3, 4, 7, 10, 11 and 13.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error

had no effect on the judgment.  *Id.* at 691.  Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . .") (citing *Richter*, 131 S. Ct. at 786).

The Court will discuss each variable in turn, accepting as true for the purpose of review that counsel failed to object to any of the sentencing variables listed by Petitioner.

### 1.      OV 3:  Physical injury to victim

Petitioner argues that OV 3, MICH. COMP. LAWS § 777.33(1)(e), was improperly scored at five points because it was not factually supported.  OV 3 considers the physical injury to the victim and assesses points depending on the degree of injury suffered by the victim.  *Id.*  The variable assigns either 50 or 100 points if a victim is killed, depending on the offense.  Life threatening or permanently incapacitating injury results in 25 points.  Ten points are scored if the victim experiences bodily injury requiring medical treatment.  And five points are scored, where, as here, the victim suffers bodily injury not requiring medical treatment.

Petitioner pleaded nolo contendered to two counts of CSC I perpetrated against a person under 13 years of age, in exhange for the dismissal of seven other counts of first and second-

degree criminal sexual conduct involving a child under 13.  (Attach. to Pet., docket #1-1, Page ID##82-83, 91.)  Petitioner states in his brief that the sentencing information report indicated that the variable was scored because the child-victim experienced pain from the anal penetration. Petitioner does not dispute these facts, he merely indicates that a victim saying that "it hurt" does not demonstrate that there was injury.  (Br. in Supp. of Pet. at 9, docket #4, Page ID#9.)  He insists that some additional showing of scratching, tearing, bruises or chronic and continuing pain is required.

Petitioner's argument is without merit.  As previously discussed, a state court's factual findings are entitled to a presumption of correctness, which a petitioner must overcome by clear and convincing evidence. 28 U.S.C. 2254(e)(1).  Here, the trial court reasonably concluded that a child's description of pain caused by anal penetration was sufficient to support a finding of injury. Counsel's decision not to object undoubtedly was strategic, as such an argument would have been ineffective and likely would have caused the trial court to be more, rather than less, harsh in sentencing.   The state courts reasonably concluded that Petitioner had failed to demonstrate ineffective assistance of counsel under the deferential standard of *Strickland*.

2.    OV 4:  Psychological injury to victim

Under OV 4, MICH. COMP. LAWS § 777.34(1)(a), a sentencing court should score ten points if the offense causes serious psychological injury that may require professional treatment.  The statute expressly provides that the mere fact that treatment has not been sought is not conclusive. MICH. COMP. LAWS § 777.34(2).  Petitioner argues that, because the victim's mother, who spoke at the sentencing, was not a trained psychologist and unable to make a psychological diagnosis, the court could not have made its finding on the variable strictly based on her remarks.

As with OV 3, Petitioner's argument is wholly unpersuasive. Petitioner was convicted of two counts of raping a child under 13. The trial court was entitled to consider the mother's statement and its own reasonable inferences from the crimes to conclude that such conduct would result in serious psychological injury to a child. Counsel's decision not to object was patently reasonable and strategic.

### 3. OV 7: Aggravated Physical Abuse

Under OV 7, MICH. COMP. LAWS § 777.37(1), a court is directed to score 50 points if the "victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." *Id.* Subsection three of the provision defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MICH. COMP. LAWS § 777.37(3).

A reasonable court could conclude that raping a child multiple times is sadistic under the definition provided by the statute. Petitioner argues that the two offenses to which he pleaded nolo contendere were merely "'bad' crime[s]," and that he cannot receive points for something that is not outside the crime itself. Even assuming that scoring on offense variables requires facts other than the minimum required to commit the offense, Petitioner pleaded nolo contendere to two CSC-I offenses, and many more instances of criminal sexual conduct were dismissed. The trial court reasonably could have concluded that the repeated occurrences of the "'bad' crime" of child rape was sadistic. Petitioner fails entirely to overcome the strong presumption that counsel acted reasonably in declining to raise an objection to the score.

4.      OV 10:  Exploitation of a victim's vulnerability

The sentencing court scored ten points on OV 10, reflecting its conclusion that Petitioner had "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or . . . abused his . . . authority status.  MICH. COMP. LAWS § 777.40(1)(b). The statute defines "exploit" as "manipulat[ing] a victim for selfish or unethical purposes."  MICH. COMP. LAWS § 777.40(3)(b).  It defines "vulnerability" as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.  Finally, it defines "abuse of authority" to mean that "a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher."  MICH. COMP. LAWS § 777.40(3)(d).

In his brief, Petitioner acknowledges that the victim was under 13 years of age and that there existed an arguable domestic relationship.  (Br. in Supp. of Pet. at 16, docket #4, Page ID#177.)  He argues, however, that the statute states that "[t]he mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability."  MICH. COMP. LAWS § 777.40(2).

Nothing presented by Petitioner suggests that the trial court made an "automatic" determination about exploitation.  Petitioner fails entirely to overcome the presumption that the trial court's finding was correct.  *See* 28 U.S.C. § 2254(e)(1).  A sentencing court reasonably could find that Petitioner had committed multiple acts of CSC I on a person under 13 years with whom he was in a domestic relationship.  Although Petitioner pleaded nolo contendere to only two counts of CSC I, he was charged with seven additional counts of conduct CSC I and CSC II, which the court could have found were committed by a preponderance of the evidence.  In addition, Petitioner was 46 years old at the time of the crime, and he repeatedly abused a child under 13 years of age who lived in

-13-

some domestic arrangement with him. The Michigan Court of Appeals has held that such circumstances were more than sufficient to support the guideline score of 10 points. *See People v. Phillips*, 666 N.W.2d 657 (2002) (finding 10-point exploitation clearly appropriate when a 67-year-old defendant engaged in sexual conduct with a 14-year-old victim who was residing in his house and who was in the process of being adopted by him.)

On these facts, the sentencing court's determination was patently reasonable. Petitioner once again fails to demonstrate that counsel's failure to object was unreasonable or that the state courts acted unreasonably in so finding.

### 5. OV II: Criminal sexual penetrations

Petitioner complains that he should not have been scored 50 points on OV 11, which requires a finding that two or more criminal sexual penetrations occurred. MICH. COMP. LAWS § 777.41(1)(a). In scoring the variable, the court must find that all sexual penetrations arose out of the sentencing offense. MICH. COMP. LAWS § 777.41(2)(a). The offense variable does not count the one penetration that forms the basis of the CSC I, MICH. COMP. LAWS § 777.41(c), and does not count sexual penetrations extending beyond the sentencing offense, which are to be scored under OV 12 or 13, MICH. COMP. LAWS § 777.41(b).

Petitioner argues that the victim stated that "the Petitioner tried to put his penis in her vagina, but it did not work and so he then put his penis in her anus. After that, Mr. Brown had the victim give him oral sex." (Br. in Supp. of Pet. at 17, docket #4, Page ID#178.) According to Petitioner, the anal sex formed the basis of one CSC I conviction and the oral sex formed the basis of the other CSC I conviction. He argues that the two penetrations did not arise out of the same offense; the anal sex was over when the oral sex began, so they are not part of the same event.

-14-

In support of his claim, he cites *People v. Johnson*, 712 N.W.2d 703, 706 (Mich. 2006).  The *Johnson* court concluded that two different sexual assaults against the same victim and occurring on two different days were not sufficiently causally connected to be counted under OV II as arising out of the sentencing offense.  *Id.*

Petitioner's reliance on *Johnson* is misplaced.  According to Petitioner's own brief, the multiple penetrations in issue here occurred on the same day as part of the same assault.  No temporal or other break occurred to separate the two into independent events.  Considering the anal penetration as the sentencing offense, the oral penetration could be counted as one penetration for scoring purposes.  In addition, the sentencing court could well have concluded that Petitioner's attempted vaginal intercourse was sufficient to constitute a penetration under the statute governing criminal sexual conduct. MICH. COMP. LAWS § 750.520a(r) (defining "penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, into the vagina or the labia majora").  The mere fact that Petitioner was unable to fully penetrate the victim's vagina in no way prohibited a finding of penetration under the law.  *See People v. Lockett*, 814 N.W.2d 295, 307 (Mich. Ct. App. 2012) (slight penetration into the labia majora is sufficient to constitute penetration.

Taken together, the court properly found two penetrations to support the scoring on OV 11, and Petitioner has failed to overcome the presumption of correctness accorded that finding. Because the trial court's decision was not erroneous, the attorney's failure to object was neither deficient nor prejudicial.  The state courts reasonably rejected Petitioner's claim of ineffective assistance of counsel on this issue.

6.      OV 13:  Continuing pattern of criminal behavior

Petitioner complains that he should not have been scored 50 points on OV 13, MICH. COMP. LAWS § 777.43(1)(a).  Under the variable, a defendant may be assigned 50 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years."  *Id.*  In scoring the variable, however, the court trial court was not allowed to count conduct already scored in OV 11 or OV 12.  MICH. COMP. LAWS § 777.43(c).

Petitioner does not argue that the trial court double-counted conduct previously scored under OV 11 or OV 12.  Instead, he argues that it is fundamentally unfair to increase his total offense score on the basis of offense counts that were dismissed as part of the plea bargaining process.

As the Court previously discussed, Petitioner does not have a federal due process interest in state-court sentencing determinations, as long as the ultimate sentence falls within the limits prescribed by state law.  *See Hutto*, 454 U.S. at 373-74.  Moreover, counsel was not ineffective in failing to object to the court considering conduct related to dismissed charges, because state law expressly permits consideration of dismissed offenses in scoring the guideline variables.  *See People v. Nix*, 836 N.W.2d 224, 230 (Mich. Ct. App. 2013).  Petitioner does not even allege that there existed no factual support for the dismissed charges or that those facts would not have supported the court's finding on OV 13 by a preponderance of the evidence.  He therefore fails to overcome the presumption that the trial court correctly decided the issue or the strong presumption that counsel's failure to object was neither unreasonable nor prejudicial.

-16-

### C.    Disproportionate Sentence

Petitioner argues here, as he did in the state courts, that his prison sentences of 15 to 40 years were disproportionate to his offenses in light of all of the mitigating circumstances. Petitioner principally claims that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). Petitioner implies that the sentence also violated the Eighth Amendment.

To the extent Petitioner argues that his sentence was disproportionate under *Milbourn*, he fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *Bradshaw*, 546 U.S.at 76; *Pulley*, 465 U.S. at 41. Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

Moreover, sentencing counsel was not ineffective in failing to challenge the sentence as disproportionate under *Milbourn* and *Babcock*. The *Milbourn* case was decided prior to legislatively adopted, mandatory sentencing guidelines on indeterminate sentences. The court implicitly recognized that sentences imposed within the discretionary sentencing guidelines ranges

were presumptively reasonable.  *Milbourn*, 461 N.W.2d at 655-59.  A Michigan court may review for proportionality only where a sentence represents a departure from the guidelines.  *Id.* at 660; *see also Babcock*, 666 N.W.2d at 239.

In the instant case, Petitioner does not argue that his sentence represented a departure from the guidelines.  As a consequence, counsel was not ineffective for failing to object on the basis of proportionality.  In addition, the trial court specifically rejected Petitioner's claim in denying his motion to correct the sentence.[2]  Any objection at sentencing therefore would have been futile.  Petitioner therefore cannot demonstrate that the Michigan courts' rejections of his claims were either contrary to or unreasonably applied established Supreme Court precedent.

Finally, to the extent Petitioner raises an Eighth Amendment claim, his claim lacks merit.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual

---

[2]In addition, Petitioner's sentence was hardly disproportionate under the circumstances of this case.  For a conviction on CSC I involving a child under 13 years, Petitioner faced a maximum sentence of life imprisonment or any term of years, but not less than 25 years.  *See* MICH. COMP. LAWS § 750.520b(2)(b).  Given that Petitioner was found guilty of two counts of CSC I and given that seven other counts of CSC I and II were dismissed but apparently supported by evidence, Petitioner's maximum and minimum are hardly disproportionate.

punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

### D.   Violation of *Cobbs* Agreement

Petitioner vaguely argues that his sentence violated his *Cobbs* agreement. He argues that he agreed to be sentenced under the guidelines with a minimum-sentence cap of 180 months, or 15 years. Petitioner does not contend that the sentencing court exceeded the cap. Instead, he contends that the court, in imposing a minimum sentence of 15 years, impermissibly construed the agreement to mean that the minimum sentence necessarily would be 15 years.

Petitioner recites no factual support for his claim. He simply reargues that the individual offense variables he contests were improperly decided, causing his guidelines range to be higher. He also reargues his claim that the resulting sentence was disproportionate. Finally, in order to constitutionalize his claim, he argues that counsel was ineffective in failing to make an objection to the alleged *Cobbs* violation.

Petitioner's argument is frivolous. The Court has previously rejected Petitioner's claims concerning the scoring on each offense variable and his proportionality argument. The Court also has rejected Petitioner's claims of ineffective assistance of counsel respecting any failure to object. Because Petitioner's minimum sentence did not exceed the minimum-sentence cap to which

Petitioner agreed in exchange for his plea, he cannot demonstrate violation of the plea agreement. Any objection by counsel on this basis would have been as futile at sentencing as it was when raised in Petitioner's motion to correct the sentence. The state courts' decisions to reject his claim were patently reasonable applications of clearly established Supreme Court precedent.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   August 6, 2014                    /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           Chief United States District Judge